IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TAMMY EZSOL,
  Plaintiff,

vs.          Case No.: 5:10cv97/RH/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
  Defendant.
_____/

## REPORT AND RECOMMENDATION

  This case has been referred to the undersigned magistrate judge under the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D), and 72.3 of the Northern District of Florida pertaining to review of administrative determinations under the Social Security Act ("the Act") and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration ("the Commissioner" of the "SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

  Upon review, this court concludes that the Commissioner's final determination is the result of the application of proper legal principles and is based on substantial evidence.  The court therefore recommends that the decision of the Commissioner be affirmed.

I.      PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits under Title II and Title XVI in February 2005, alleging that she became disabled on February 16, 2005 (*see* Tr. 19).[1]  The applications  were denied initially and on reconsideration (*see* Tr. 29–32, 656–62).  Plaintiff requested review of the unfavorable determination by an administrative law judge ("ALJ"), who held a hearing on April 28, 2008, at which Plaintiff was represented by counsel and testified.  A vocational expert ("VE") also testified.  On August 28, 2008, the ALJ issued a decision denying Plaintiff benefits (Tr. 19–28).  The Appeals Council denied Plaintiff's request for review on August 17, 2009, thus rendering the ALJ's unfavorable determination the final decision of the Commissioner and subject to judicial review (Tr. 3–5).  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal timely followed.[2]

II.     FINDINGS OF THE ALJ

In his August 28, 2008, decision the ALJ made the following findings:

1)      Plaintiff meets the insured status requirements of the Act through June 30, 2010.

2)      Plaintiff has not engaged in substantial gainful activity since February 16, 2005, her alleged disability onset date.

3)      Plaintiff has the following severe combination of impairments: degenerative disc disease of the lumbar and cervical regions of the spine; status post-colostomy and take-down of colostomy; remote diagnosis of fibromyalgia; and degenerative joint disease of the shoulders with repair of a gleno-humeral tear.

---

[1] All references to "Tr." refer to the transcript of the SSA record filed on August 11, 2010 (doc. 14).  The cited page numbers refer to those found in the upper right-hand corner of each page of the transcript rather than those assigned by the court's electronic docketing system.

[2]  The court, noting that Plaintiff's initial and amended complaints indicated that she currently resides in Indiana, observed in an order issued May 10, 2011, that venue did not appear to be proper in this district but rather in the Southern District of Indiana; the court therefore directed the parties to confer and file a joint notice that addressed the question of venue (*see* doc. 24).  In their joint notice filed in response to the court's order, the parties advise that Plaintiff now lives in Lynn Haven, Florida, and thus venue in this district is proper (*see* doc. 25).  The Commissioner has waived any objection as to venue.  Moreover, given Plaintiff's current residence, the court concludes there is no apparent reason to transfer this case, in the interest of justice, to the Southern District of Indiana.

4)      Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.

5)      Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work, with the following limitations: she can lift and/or carry ten pounds frequently and twenty pounds occasionally; sit, stand, or walk six hours each in an eight-hour period; occasionally stoop, kneel, crouch, and climb stairs; never climb ladders, ropes, or scaffolds; and never work at unprotected heights.

6)      As the VE testified, Plaintiff is capable of performing her past relevant work as a case worker and counselor.  This work does not require the performance of work-related activities precluded by Plaintiff's RFC.

7)      Plaintiff has not been under a disability, as defined in the Act, from February 16, 2005, through August 28, 2008, the date of the ALJ's decision.

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence in the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis,

125 F.3d at 1439.  The court may not decide the facts anew, reweigh the  evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

---

[3]  In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. Separate, parallel statutes and regulations, however, exist for DIB and SSI claims (see 20 C.F.R. §§ 404, 416). Therefore, hereinafter, citations in this report should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    BACKGROUND

A.      Plaintiff's Education and Employment History

Plaintiff was forty-three years of age on February 16, 2005, her alleged disability onset date (Tr. 72).  She has a college degree in special education (Tr. 700), with past relevant work as a counselor, case manager, cashier, and customer service representative (Tr. 720).

B.      Relevant Medical History[4]

The medical record prior to Plaintiff's alleged disability onset date is relatively limited.  It reflects that Plaintiff was seen from November 2004 until February 2005 at Gateway Medical Associates in Clarksville, Tennessee ("Gateway"), for symptoms of conditions that included allergies, depression, knee and lower back pain, migraines, hypothyroidism, and fibromyalgia (Tr. 579–87).  January 2005 radiographs taken of Plaintiff's lumbar spine showed minimal scattered osteophytes and, apparently, pseudoarticulation between L5 and S1 on the left side (Tr. 599).  A February 2005 magnetic resonance image ("MRI") of the lumbar spine revealed a transitional vertebra at S1, a small disc herniation centrally at L5-S1, and areas of disc bulging at L1-2, L2-3, and L4-5 (Tr. 597).  Prior to her alleged disability onset date, Plaintiff also saw a licensed counseling

---

[4] At seven hundred twenty-six pages (six hundred ninety-six of which contain medical or other evidence), the administrative record in this case is extensive.  The following summary of the medical evidence, presented in chronological order to the extent practicable, generally follows the parties' citations to the record.  Accordingly, although the court has added some references not included by the parties, not every medical record in the administrative file has been cited.

psychologist, James E. Davis, Ed.D., who diagnosed Plaintiff with depressive disorder (Tr. 650A–54).

After her alleged onset date, Plaintiff continued treatment at Gateway.  She was seen from February 2005 through April 2005 for, among numerous other conditions, chronic lower back pain (Tr. 576–78).  In June 2005 Plaintiff presented with complaints of lower back and radiating neck pain, for which she was advised to increase her medication (Tr. 575).  Plaintiff was also examined by neurologist Gregory Lanford, M.D., in February 2005 (Tr. 641–46).  Dr. Lanford reported a positive straight leg raise test on the right, with diminished range of motion of the back in extension. He noted that an MRI revealed a hemangioma in the body of L2 as well as a right paracentral disc protrusion at L5-S1, which he identified as the cause of Plaintiff's back pain.  Dr. Lanford's recommended method of treatment was a series of epidural steroid injections (Tr. 641).

Following a move to Indiana, Plaintiff was seen in the office of Stephen Cullen, M.D. (*see* Tr. 434–60), where in September 2005 she was initially assessed with backache, neck pain, reflux esophagitis, neurotic disorder, and depressive disorder (Tr. 435).  An MRI of the cervical spine taken in September 2005 revealed broad-based central disc/spur complex at C5-C6; at C6-C7 there was  mild central stenosis and asymmetric disc/spur complex with a mild sized left posterior lateral disc herniation (Tr. 454).   An MRI of the lumbar spine revealed multi-level degenerative spondylosis changes, with the following significant findings:  1) L5-S1broad-based  disc protrusion/disc herniation with moderate to marked central spinal stenosis; degenerative facet arthropathy; 2) L4-L5 broad-based low signal disc/spur complex extending into the left L4-L5 neural foramen and mild central spinal stenosis; 3) posterior annular bulging at L1-L2 and L2-L3 with mild central spinal stenosis; and 4) hemangiomas at L1 and L2 (Tr. 455).

Gavin Chartier, M.D., a pain specialist, examined Plaintiff in October 2005 (Tr. 471–72) and performed an interlaminar posterior cervical epidural procedure (Tr. 473).  His pre- and post-procedure diagnoses were cervical disc herniation at C5-C6 with cervical radiculitis (Tr. 473).  In December 2005 Plaintiff was seen in the office of David Eggers, M.D., for radiating back pain, neck pain, headaches, and arm pain (Tr. 467).  Upon examination of Plaintiff, Dr. Eggers noted normal strength, a normal motor exam, and normal gait and station (Tr. 466).  Reflexes were hypoactive, with tenderness and severe pain on range of motion of the shoulders suggesting possible rotator cuff

problems.   After reviewing Plaintiff's cervical, thoracic, and lumbar MRIs, Dr. Eggers noted degenerative changes with a somewhat narrow canal but no major spinal cord or nerve compression. He opined that Plaintiff's spinal pain was related to her degenerative disc disease (*id.*).

Plaintiff presented to Daviess Community Hospital Emergency Room ("Daviess ER") in November 2005 with complaints of back pain (Tr. 469).  She was given an injection and told to follow up the next day with Dr. Cullen. (Tr. 469).  A pain management nurse practitioner examined Plaintiff in November 2005 (Tr. 428–30), and assessed her with neck pain, back pain, displaced lumbar disc, spinal stenosis, degenerative disc disease of the cervical spine, obesity, and depression/anxiety per history (Tr. 429).  The nurse altered Plaintiff's medications (Tr. 430).

George Morgan, M.D., examined Plaintiff in January 2006 for bilateral shoulder pain and weakness (Tr. 463).  Dr. Morgan noted diffuse tenderness over the anterior and lateral aspects of both shoulders, mildly positive impingement signs, and "uncomfortable" rotator cuff elements when tested.  Radiographs were unremarkable, showing only minor sclerosis of the greatest tuberosities that was suggestive of rotator cuff pathology (*id.*).  Dr. Morgan opined that Plaintiff's symptoms probably were related to rotator cuff pathology and were magnified by fibromyalgia and chronic fatigue syndrome.  Dr. Morgan offered Plaintiff cortisone injection treatments, which she declined, but she accepted a Medrol dosepak as it had relieved her back pain in the past (*id.*).

In February 2006 Plaintiff returned to the Daviess ER with complaints of back pain, which the attending physician characterized as "moderate discomfort" (Tr. 461–62).  The diagnosis was back pain with muscle spasm, for which Plaintiff was given an injection that relieved her pain (Tr. 461).  March 2006 MRIs taken of Plaintiff's left and right shoulders showed moderate impingement on the distal supraspinatus muscle by acromioclavicular joint hypertrophy; moderate atrophy of the shoulder muscles; and moderate biceps tendinosis (Tr. 451, 452).  A two centimeter full thickness tear in the distal rotator cuff could be correlated clinically (Tr. 451).

In June 2006, Molly Weiss, M.D., saw Plaintiff for complaints of bilateral shoulder pain (Tr. 191– 93).  Examination of the left shoulder revealed severely limited range of motion with tenderness to palpation over the anterolateral aspect of the shoulder; in the right shoulder there was decreased range of motion as well as tenderness to palpation over the anterolateral aspect (Tr. 192). Reviewing the March 2006 MRIs of the shoulders, Dr. Weiss stated that her impression was bilateral

rotator cuff tears.  She recommended surgical repair of the left rotator cuff and conservative treatment of the right rotator cuff (*id.*).  Dr. Weiss performed rotator cuff surgery on the left shoulder in June 2006 (Tr. 206–08).  As of August 2006, Dr. Weiss noted that Plaintiff was doing well and had little post-surgery pain (Tr. 197).  A progress note from August 2006 reports that Plaintiff was making progress in improving her range of motion (Tr. 211).  Plaintiff's final discharge summary from physical therapy, dated December 2006, reflects that she had limited use of her left upper extremity for activities of daily living, along with limited range of motion, weakness, and pain in her left shoulder (Tr. 213).

An MRI of Plaintiff's lumbar spine taken in May 2007 revealed no change from the September 2005 study (Tr. 230–31).  Plaintiff was hospitalized in September 2007 for peritonitis with sepsis secondary to perforated diverticula (Tr. 290).  Following sigmoid colon resection and colostomy, she was admitted to a nursing home to recuperate from September 2007 to October 2007 (Tr. 272; 395–400).  In January 2008 Plaintiff's colostomy was reversed (Tr. 242–47).

Nurse practitioner Vera Foley, who was associated with Dr. Cullen's office, treated Plaintiff from September 2005 through June 2006 for pain and numerous other complaints (Tr. 438–51).  In November 2005 Ms. Foley authored a letter stating that Plaintiff was under her care for osteoarthritis, neck pain, back pain, and multiple joint pain (Tr. 468).  Ms. Foley opined that Plaintiff was totally disabled and unable to perform any work for at least one year (*id.*).  Other health care professionals in Dr. Cullen's office continued to see Plaintiff from June 2008 through February 2008 for varied complaints (Tr. 217–40).  Plaintiff's assessments included limb pain thought to be related to her smoking (Tr. 217A); allergic rhinitis, reflux esophagitis, nausea, and myalgia/myositosis, not otherwise specified (Tr. 224); and hypothyroidism and edema (Tr. 226).  Other "acute problems" included feminine stress incontinence, hypertension, ovarian failure, skin eruption, joint pain, headache, sinusitis, depressive disorder, backache, osteoarthritis, neck pain, and neurotic disorder, among other conditions (Tr. 227–28).

Plaintiff was seen at the Pain Management Center, Jasper, Indiana, from November 2005 through May 2009 (*see* Tr. 150–186, 482–518, and 668–77[5]).  At Plaintiff's initial visit, she was assessed with neck pain, back pain, displaced lumbar disc, spinal stenosis, degenerative disc disease of the cervical spine, obesity, and depression and anxiety, per history (Tr. 517).  Over the course of her treatment at the Pain Management Center, among other physical findings (that ordinarily were identified by circling or underlining items on a lengthy standardized form), Plaintiff was frequently assessed as having positive trigger points in the trapezoid, rhomboid, and/or paravertebral muscles (*see, e.g.,* Tr. 150, 153, 155, 161, 163, 166, 169, 171, 173, 175, 177, 179, 181, 184, 186, 482, 484, 487, 490, 495, 497, 499, 503, 506, 508, 511, 513, 515, and 676); on other occasions, no positive trigger points were noted (*see, e.g.,* Tr. 157, 672, 673, 674, 675, 676, and 677).[6]  Plaintiff was also

---

[5]  The medical records in the transcript at pages 668–77 were created from November 2008 through May 2009, or after the ALJ issued his August 2008 decision.  These records therefore were before the Appeals Council but not the ALJ.

[6]  The court issued a Scheduling Order on August 13, 2010 (doc. 15), which directed that the parties' memoranda in support of their positions must specifically cite the record by page number for factual contentions.  The court advised the parties that the failure to support factual contentions with accurate, precise citations to the record would result in the contentions being disregarded for lack of proper development (*id.* at 2).

Plaintiff states in her memorandum that the medical record shows she "was consistently positive for trigger points throughout her body . . . ." (doc. 18 at 9)—a statement of particular relevance in this case in which Plaintiff alleges disability based on fibromyalgia.  A diagnosis of this condition in part relies on the presence of positive trigger points. *See* Stedman's Medical Dictionary 671 (27th ed. 2000) (noting that diagnostic criteria for fibromyalgia include widespread pain as well as point tenderness in at least eleven of eighteen specified sites).  Plaintiff's factual contention does not comply with the court's instruction, however, as she cites *no* page numbers in support (*see id.*).  Additionally, Plaintiff makes only general references to some sixty-six pages of the record (the majority of which pages contain lengthy and highly detailed medical information) in connection with the statement that she followed up with the Pain Management Center at least once per month (*see* doc. 18 at 9).  Such citations are wholly insufficient to satisfy the court's instruction in the Scheduling Order.

In this instance, despite the failure of Plaintiff's counsel to comply with the court's instruction, the court has not completely disregarded the contention that Plaintiff "was consistently positive for trigger points throughout her body."  Rather, in order not to unduly penalize Plaintiff, the court conducted a limited review of the cited span of pages to assess Plaintiff's statement.  In the course of this process, the court did not locate any references in the Pain Management Clinic records at issue that would suggest findings of positive trigger points "throughout" Plaintiff's body.  Rather, while Plaintiff's medical records may reflect that she experienced pain in various parts of her body due to various conditions, the references to trigger point pain refer specifically to the trapezoid, rhomboid, and/or paravertebral muscles of the torso only; moreover, not all of these muscles appear to have been involved on each visit when positive trigger points were observed.  Additionally, that Plaintiff exhibited positive trigger points "consistently" appears to be something of an overstatement.  As noted above, while positive triggers were observed frequently during Plaintiff's visits to the Pain Management Center (perhaps at as many as 75–80% of the visits), they were not reported for many other visits (approximately 20–25% of them).  Discrepancies such as these, whether considered slight or significant, point up the importance of complying with the court's requirement of supporting factual contentions with *accurate* and *precise* citations to the record.  The court should not have to, and is not required to, scour the record to find support for factual

frequently assessed with osteoarthritis of the shoulders (*see, e.g.,* Tr. 153, 155, 161, 177, 179, 181, 184, 186, 484, 487, 490, 495, 497, 499, 506, 515, and 676), and pain, degenerative disc disease, spinal stenosis and/or radiculitis of the cervical spine, lumbar spine, hips, shoulders, and/or knees (*see, e.g.,* Tr.  150, 153, 155, 157, 161, 163, 166, 169, 171, 173, 175, 177, 179, 181, 184, 186, 487, 490, 506, 508, 511, 513, 515, 672, 673, 674, 675, 676, and 677).   Although many of the Pain Management Center records contain the underlined or circled notation "fibromyositis" or "fibromyositis/myofascial" (*see, e.g.,* Tr. 150, 153, 161, 511, and 513), many of the records do not (*see, e.g.,* Tr. 155, 484, 487, 490, 495, 497, 499, 506, and 508).   Additionally, while at many visits Plaintiff reported that medication for pain control was not effective (*see, e.g.,* Tr. 152, 165, 176, 177, 178, 180, and 181), she often reported that it was effective (*see, e.g.,* Tr. 154, 156, 160, 162, 163, 168, 170, 172, 173, 174, and 175).

Plaintiff also submitted additional records to the Appeals Council from Narcisa German, M.D. (Tr. 678–92).  These records reflect that in March 2008 Plaintiff presented to Dr. German to be evaluated for fibromyalgia.  Dr. German noted that Plaintiff had a reported history of having been diagnosed with this condition fifteen years prior (Tr. 678).  Upon physical examination of Plaintiff, Dr. German noted seventeen positive trigger points (Tr. 680).  Her initial opinion was that Plaintiff suffered from unspecified myalgia and myositis, with a differential diagnosis that included fibromyalgia, inflammatory or endocrine myopathy, hepatitis C, and associated fibromyalgia and osteomalacia (*see* Tr. 681).  At a follow-up visit in April 2008, Plaintiff reported that she continued to have muscle pain but that it was not as intense (Tr. 683).  Dr. German reported that test results for hepatitis C, rheumatoid arthritis, connective tissue disease, and Lyme disease were unremarkable (*id.*).  Physical examination revealed eighteen positive trigger points (Tr. 684).  Dr. German stated that treatment for fibromyalgia would be initiated if indicated after the completion of planned work-ups to assess Plaintiff's hypothyroidism and possible obstructive sleep apnea; she recommended a follow-up visit in six months (Tr. 685).  Returning to Dr. German in January 2009, Plaintiff reported she was doing much better but still had pain and fatigue (Tr. 686).  Dr. German noted that eighteen

---

contentions made by the parties.  Counsel is cautioned that deviation from this requirement in the future will result in the court's disregarding the factual contention without attempting to locate a source of support.

trigger points were positive (Tr. 687).  In the assessment section of her report Dr. German listed two conditions, hypothyroidism and generalized osteoarthritis (Tr. 688).  In the discussion part of this section Dr. German also addressed the condition of fibromyalgia, noting that a sleep study was needed to rule out obstructive sleep apnea, that Plaintiff continued to complain of myalgias despite the use of Cymbalta, and that Plaintiff complained of insomnia (*id.*).  Dr. German advised radiographs of the hand to assess Plaintiff's osteoarthritis; with respect to Plaintiff's "Myalgia & Myositis Unspec," Dr. German verified Plaintiff's current medications, prescribed several others, and advised a sleep study (*id.*).  Plaintiff was advised to return in six weeks or shortly after a sleep study had been completed (*id.*).  There are no additional records from Dr. German, so the record does not reflect whether the sleep study or any other tests were performed.

C.      Examining and Non-Examining Consultative Assessments

Mike Sebastian, M.D., performed a consultative physical examination of Plaintiff in August 2005 (Tr. 565–68).  Dr. Sebastian noted that Plaintiff walked with caution but with "fair speed and good sustainability and stability," that she did not require an assistive device, and that she had no trouble moving from the chair to the examination table (Tr. 566–67).  Plaintiff's range of motion was normal throughout her body though she expressed pain on lumbar extension; she was able to walk on her heels and toes, and she could squat (Tr. 567).  Seated straight leg raising was negative but supine straight leg raising was positive at approximately forty-five degrees.  Gross and fine manipulative ability was good in the left hand, with fine manipulative ability slightly impaired in the right hand (*id.*).  Dr. Sebastian observed that Plaintiff had a reported history of fibromyalgia, depression, back pain with possible degenerative disc disease, and thyroid disease.  Medication helped her depression but she continued to complain of significant back pain.  Based on his physical examination and the information available to him, it was Dr. Sebastian's opinion that Plaintiff did not have significant limitations of daily living (Tr. 568).  He concluded that she could stand and walk for two hours in an eight-hour day (*id.*).

Two non-examining physicians reviewed Plaintiff's medical records.  George W. Bounds, M.D., opined in May 2005 that Plaintiff's fibromyalgia, back problems, and thyroid disease limited her to medium work that required no more than occasional climbing of ladders, ropes, and scaffolds; he also opined that Plaintiff's allegation of constant pain was only partially credible (Tr. 629–36).

Also in May 2005, Andrew Phay, M.D., opined that Plaintiff's depression only caused mild limitations in her activities of daily living, social functioning, and concentration, persistence, or pace. He therefore concluded that Plaintiff's depression was a non-severe impairment (Tr. 615–28).

      D.     Hearing Testimony

Plaintiff testified at the April 28, 2008, administrative hearing that she suffers severe pain in her hips, legs, knees, and lower back (Tr. 704). Plaintiff stated that she takes medication to reduce the intensity of her pain but the medication makes her sleepy; she also noted that other types of treatments which had been attempted in the past had not been successful in relieving her pain (*id.*; Tr. 718). Asked if she could perform a sedentary job requiring little lifting and carrying and allowing her to stand briefly, Plaintiff testified that "it would depend on the weather" (Tr. 707–08). Plaintiff stated that her pain worsened when it rained, and she had to "just lay and sleep" (Tr. 708). Due to pain, Plaintiff stated, she sleeps only two to six hours per night (Tr. 712). Plaintiff also reported that she could not reach overhead with her left arm (Tr. 715); rotator cuff surgery on the left shoulder had not helped much, as she is unable to reach much further than she had prior to the surgery (Tr. 706). Plaintiff acknowledged that her colostomy had been reversed and that her system worked normally (Tr. 707). Plaintiff stated that she could sit for ninety minutes before needing to rise (Tr. 705). She could stay on her feet twenty minutes at a time (*id.*). She is unable to walk very much and, when she does walk, she requires a cane. She is able to pick up a one gallon container of milk (*id.*). According to Plaintiff, she does not do any dusting, mopping, or vacuuming (Tr. 709), although she is able to prepare food for herself using a microwave oven. She leaves her house once or twice per week either to drive to the store or go to her daughter's house (*id.*). Plaintiff testified that she is able to dress, bathe, and groom herself but that her daughter fixes her hair (Tr. 719).

The VE testified that Plaintiff's past work as a counselor was classified as sedentary work and that her past work as a case manager and a cashier were both classified as light work (Tr. 720). Posing a hypothetical question to the VE, the ALJ described an individual of Plaintiff's age, education, and vocational history. This individual had the ability to lift and carry ten pounds frequently and twenty pounds occasionally; to sit six hours in an eight-hour period; to stand and walk intermittently for two hours in an eight-hour period; and to occasionally stoop, kneel, crouch, crawl, and climb stairs. The individual could never climb ladders, ropes, or scaffolds; could not

work at unprotected heights; and could not work around dangerous machinery. The VE testified that such an individual could perform Plaintiff's past relevant work as a counselor (Tr. 721). In response to a question from Plaintiff's counsel, the VE testified that the individual would be able to perform Plaintiff's past work as a counselor even if she were limited to no reaching overhead with her left arm and could only perform occasional fine manipulation, grasping, and turning with her left hand (Tr. 723). The VE also testified that if the individual were able to stand or walk six hours in an eight-hour workday, she would be able to perform Plaintiff's past work as a case manager and cashier (Tr. 721). The ALJ asked the VE if the individual were off-task consistently ten to fifteen minutes per hour due to her impairments whether she could perform any past work or other work (Tr. 722). The VE indicated that an individual who was absent from her work station to that extent would not be able to engage in any work activity (*id.*). The same would be true with respect to an individual who missed two to three days of work per month (*id.*).

V.     ISSUES PRESENTED

Seeking reversal of the Commissioner's decision and remand of this matter for further proceedings, including the payment of benefits, Plaintiff presents two grounds for relief: (1) the ALJ failed to comply with the Commissioner's policies in evaluating the severity of Plaintiff's fibromyalgia; and (2) the ALJ failed to give proper weight to Plaintiff's testimony alleging pain from fibromyalgia, as well as from her shoulder, cervical spine, and lumbar spine conditions (*see* doc. 18 at 1, 17). The Commissioner responds that the ALJ properly evaluated Plaintiff's credibility concerning her pain testimony and properly considered her fibromyalgia symptoms when determining her RFC. According to the Commissioner, the decision should be affirmed because Plaintiff had a fair hearing, her claims were considered in accordance with applicable statutes and regulations, and substantial evidence supports the unfavorable determination (doc. 23 at 5, 11, 12).

VI.     DISCUSSION

Before addressing the parties' arguments (which it does in the order it finds most convenient rather than in the order presented by Plaintiff), the court first provides what it considers to be some helpful background information on fibromyalgia, a disease recognized by the American College of Rheumatology as both real and difficult to confirm.

> Fibromyalgia is defined by chronic widespread muscular pain and symptoms such as fatigue, sleep disturbances, stiffness, cognitive and memory problems, and symptoms of depression and anxiety.  More localized pain conditions often occur in patients with fibromyalgia, including migraine or tension headaches, temporomandibular disorder, irritable bowel syndrome, gastroesophageal reflux disorder, irritable bladder, and pelvic pain syndromes.  The symptoms of fibromyalgia and associated conditions can vary in intensity and wax and wane over time.  Stress often worsens these symptoms.
>
> * * * *
>
> Patients can be diagnosed accurately based on the symptoms they experience.  Physical exam findings of tenderness may aid in the diagnosis but are not essential.  There are no diagnostic tests, such as X-rays, blood tests or muscle biopsies, for this condition.
>
> Because pain all over the body is the defining characteristic[ ] of fibromyalgia, medical care providers focus on the features of the pain to distinguish it from other rheumatic disorders. . . .   The diagnosis of fibromyalgia is made taking into account the overall burden of symptoms in patients with widespread body pain and no other explanation for the pain.

American College of Rheumatology, <u>Fibromyalgia</u> (2010), available at http://www.rheumatology.org/practice/clinical/patients/diseases_and_conditions/fibromyalgia.asp (last visited June 27, 2011).

　　As noted above, a patient may be affirmatively diagnosed with fibromyalgia if she has widespread pain in combination with tenderness in at least eleven of eighteen specific tender point sites.  *See* n.6, *supra; see also* National Institute of Arthritis and Musculoskeletal and Skin Diseases, <u>Questions and Answers About Fibromyalgia</u> (2009), available at http://www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm (last visited June 27, 2011).  The Seventh Circuit has held that requiring positive laboratory findings of fibromyalgia to make a disability determination is error.  <u>Sarchet v. Chater</u>, 78 F.3d 305 (7th Cir. 1996) (ALJ erred in finding claimant not disabled because of lack of positive laboratory tests) (cited approvingly in <u>Stewart v. Apfel</u>, 245 F.3d 793 (11th Cir. 2001) (table), 2000 U.S. App. LEXIS 33214 (unpublished opinion).[7]  In <u>Stewart</u>, the Eleventh Circuit reviewed medical research on fibromyalgia, noting that it often lacks medical

---

[7]  Unpublished decisions of this court are not binding precedent.  *See* 11th Cir. R. 36–2.

or laboratory signs, is generally diagnosed mostly on an individual's self-described symptoms, and its hallmark is a lack of objective evidence.  The appellate court therefore reversed the ALJ's determination that the fibromyalgia claimant's testimony was not credible, based on the lack of objective evidence documenting the impairment.  Stewart, 245 F.3d at 793, n.4, 2000 U.S. App. LEXIS 33214, *9, n. 4.  More recently, the Eleventh Circuit addressed fibromyalgia in Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005), where it reiterated the impropriety of focusing on the absence of objective findings corroborating claims of the impairment.  Other circuit courts of appeal that have considered the issue have found that fibromyalgia is a disease that can serve as the basis for a medically determinable impairment, even without positive laboratory findings. *See, e.g.*, Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998); Preston v. Secretary of Health & Human Services, 854 F.2d 815, 817–18 (6th Cir. 1988).   Indeed, the Commissioner has instructed that in cases of chronic fatigue syndrome, a condition that, like fibromyalgia, is based largely on self-reported symptoms, "[p]ersistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points" is an example of a medical sign that establishes the existence of a medically determinable impairment.  Social Security Ruling ("SSR") 99–2p, 1999 WL 271569 (1999).

A.     The ALJ's Consideration of Plaintiff's Pain Testimony

Plaintiff apparently contends that, in light of the medical evidence (including MRIs of her cervical and lumbar spine revealing multiple herniated/ bulging discs as well as spinal stenosis, and reports showing that she experiences widespread pain from fibromyalgia and persistent pain and tendinosis in her shoulders), the ALJ erred by discrediting her pain testimony (doc. 18 at 16).  The Commissioner responds that the ALJ did not err, as he provided well-articulated reasons supported by substantial evidence for his conclusion that Plaintiff was not a completely credible witness concerning the severity of her pain.

To establish disability based on testimony concerning pain or other subjective symptoms, the claimant must satisfy a three-part "pain standard."  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  That is, a claimant must first show evidence of an underlying medical condition, and then, either (a) objective medical evidence that confirms the severity of the alleged pain stemming from that condition, or (b) that the objectively determined medical condition is so severe

that it can reasonably be expected to cause the alleged pain.  *Id.*; *see also* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that this "standard also applies to complaints of subjective conditions other than pain").  "While both the Regulations and the Hand [v. Bowen, 793 F.2d 275, 276 (11th  Cir. 1986] standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1215.  The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence."  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations omitted).  The presence or absence of evidence to support symptoms of the severity claimed, however, is a factor that can be considered.  Marbury v. Sullivan, 957 F.2d 837, 839–40 (11th Cir. 1992); Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  If the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision that are based on substantial evidence.  MacGregor, 786 F.2d at 1054; Wilson, 284 F.3d at 1225–1226; Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).  Where the Commissioner fails to do so, as a matter of law the testimony should be accepted as true.  Holt, 921 F.2d at 1223; MacGregor, 786 F.2d at 1054.

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."  Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[8]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  Hand, 793 F.2d at 1548–49.  It is within the ALJ's "realm of judging" to determine whether "the quantum

---

[8]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

of pain [a claimant] allege[s][is] credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

In the instant case, the court concludes that the ALJ was entitled to discount Plaintiff's credibility. In making his credibility determination, the ALJ discussed the September 2005 MRI of Plaintiff's lumbar spine (retaken in May 2007, with no significant changes noted), fairly concluding that the clinical impressions were not indicative or supportive of a finding of decreased daily activities of living (Tr. 25). Moreover, the ALJ was entitled to conclude that Plaintiff's daily activities generally were inconsistent with her alleged pain and limitations in standing and sitting (*id.*). The ALJ observed that Plaintiff testified she could sit for ninety minutes on a good day but that, as to bad days, the record revealed no established nexus between signs and findings and Plaintiff's asserted reduced functioning (Tr. 27). Plaintiff remained able to care for her personal needs and perform some household chores; she shopped for groceries, maintained a driver's license, and visited her daughter's home, all of which were not consistent with a disabling level of impairment (*id.*). Thus the ALJ did not err when he concluded that, based on Plaintiff's ability to perform activities that were inconsistent with her allegations of disabling pain, she was less than fully credible. *See* Dyer v. Barnhart, 395 F.3d 1206, 1212 (11th Cir. 2005).

The medical record provides additional support for the ALJ's credibility assessment. The ALJ noted that in December 2005, after examining Plaintiff and reviewing her MRIs, Dr. Eggers found degenerative disc disease but no evidence of major spinal cord or nerve compression (Tr. 25). The ALJ also discussed Dr. Morgan's records, including his report that radiographs of Plaintiff's shoulders were unremarkable and only showed minor sclerosis of the greatest tuberosities that was suggestive of rotator cuff pathology (Tr. 26). The Daviess ER records showed that Plaintiff experienced moderate pain which was relieved by injection (*id.*). The ALJ noted that records from the Pain Management Center reflected Plaintiff's complaints of pain. The reported pain was worse after Plaintiff performed household chores and walking, which suggested to the ALJ that although there was some pain was associated with doing them, Plaintiff was engaging in these activities (*id.*).

Following MRIs taken of Plaintiff's shoulders in March 2006, Dr. Weiss concluded that surgery was indicated on the left shoulder, which she performed in June 2006 (*id.*).  Based on Dr. Weiss' reports, the ALJ reasonably concluded that the surgery had been successful.  The ALJ also noted Plaintiff's successful abdominal surgery (Tr. 26–27).  The ALJ discounted the disability assessment Vera Foley, a nurse practitioner, noting that it lacked documentary evidence or any explanation in support and also invaded the province of disability determination reserved to the Commissioner (Tr. 27).  As to the reports of Drs. Bounds and Phay, the ALJ noted that these non-examining consultants had found no significant limitations with respect to Plaintiff's ability to perform activities of daily living and that there was no evidence of the need for exertional, postural, or other limitations or physical restrictions to permit work placement (Tr. 25, 27).  The ALJ discounted Dr. Sebastian's conclusion that Plaintiff could only stand or walk two hours in an eight-hour period because the signs and findings recounted in his report, and elsewhere in the record, did not support this degree of limitation.

   Based on the ALJ's review of Plaintiff's medical records (as well as this court's review as outlined in Section IV, *supra*), which includes references to the treatment notes, clinical findings, and objective medical evidence provided by the above-named medical sources, the court concludes that the reasons articulated by the ALJ for partially discrediting Plaintiff's pain allegations are adequately supported by substantial evidence in the record as a whole.  *See* MacGregor, 786 F.2d at 1054 (indicating that where Commissioner refuses to credit a plaintiff's subjective testimony he must do so explicitly and provide reasons for the ruling that are based on substantial evidence).  Indeed, it was well within the ALJ's "realm of judging" to find that the quantum of pain Plaintiff alleges was not credible when considered in light of all of the other evidence.  Arnold, 732 F.2d at 884.  Accordingly, the ALJ was entitled to determine that Plaintiff's allegations concerning her cervical and lumbar pain, shoulder pain, and pain from fibromyalgia symptoms were inconsistent with the alleged severity of impairments and claimed limitations (*see* Tr. 27).  For these reasons, the court concludes that the ALJ's credibility determination should not be disturbed.

   Plaintiff also contends that the ALJ improperly discounted her hearing testimony that rainy weather affects her level of pain and ability to work (doc. 18 at 14).  Although Plaintiff apparently attempts to rely on information from the National Fibromyalgia Association as evidence that the

symptoms of some fibromyalgia patients are adversely affected by bad weather, such evidence is not properly before this court.[9]  *See* 42 U.S.C. § 405(g) (judicial review in Social Security disability cases is limited to "the pleadings and transcript of record.").  Regardless, while perhaps enlightening, the information is not probative of Plaintiff's symptoms or impairments in *this* case. Plaintiff points to nothing in the record that shows she ever made such complaints to a medical provider, and the court is not aware of any such evidence.  Moreover, with the exception of Plaintiff's subjective testimony—which in any event the ALJ was entitled to discount for the reasons previously stated—there is no other evidence in the record that supports her contention that rain increases her pain and adversely impacts her ability to work.

      B.      The ALJ's RFC Determination and Plaintiff's Symptoms of Fibromyalgia

      As an initial matter, the court observes that Plaintiff's remaining ground for reversal and remand is neither clearly stated nor properly developed (*see* doc. 18 at 14–17).[10]  The court construes the argument, however, as asserting that in determining Plaintiff's RFC at step four of the sequential analysis the ALJ failed to properly consider the effect of her symptoms of fibromyalgia on her ability to perform work.[11]

---

    [9]  The cited information suggests that for some patients weather may be an aggravating factor of fibromyalgia symptoms, including increased pain (*see* doc. 18 at 14).

    [10]  For example, Plaintiff contends that the ALJ failed to comply with the Commissioner's policies when he evaluated the severity of her fibromyalgia.  The court is not aware of any specific Social Security Ruling enunciating the Commissioner's policies concerning fibromyalgia.  *See* SSR 99-2p, 1999 WL 271569, *8 n.3 (noting the overlap in symptoms between chronic fatigue syndrome and fibromyalgia but not identifying the specific criteria needed to establish fibromyalgia).  Nowhere in her memorandum, however, does Plaintiff identify the particular policies with respect to which she alleges the ALJ committed error or the precise basis of such error.  Also, although Plaintiff notes that the ALJ correctly (if only in a brief mention) determined that her remote diagnosis of fibromyalgia was a severe impairment at step two of the sequential analysis, she also indicates in her request for relief that the ALJ did not "properly evaluate how her fibromyalgia impacts her ability to perform basic work activities" (*id.* at 18), a statement which implicates error at step two.  Additionally, Plaintiff argues that her medical records reflect she suffers from pain "all over" and also where trigger points are located (*see id.* at 15–17).  Plaintiff apparently takes the position that this record supports a diagnosis of fibromyalgia and thus, *ergo*, she is disabled; alternatively, she may be arguing that her fibromyalgia is so severe that it is disabling.  In any event, as to either possible alternative, while Plaintiff cites broadly to the record she makes no explicit arguments in this regard.

    [11]  The court notes that by finding at step two of the sequential analysis that Plaintiff had a "remote diagnosis of fibromyalgia" (*see* doc. 14 at 21), the ALJ effectively determined that this impairment caused more than a minimal limitation on Plaintiff's ability to perform work-related activities.  *See* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (stating that a severe impairment causes more than "a minimal limitation on a claimant's ability to function."); *see also* 20 C.F.R. § 404.1521(a) ("An impairment . . . is not severe if it does not significantly limit [an applicant's]

While Plaintiff is correct that the impairment of fibromyalgia may form the basis of a disability determination, to the extent she contends that such a diagnosis, standing alone, is sufficient to make a finding of disability, she is incorrect.  *See* Hoffman v. Astrue, 259 Fed. App'x 213, 217–18 (11th Cir. 2007) (stating that "[a]lthough the record established a diagnosis of fibromyalgia, the record does not support a finding that Hoffman's physical condition qualified her for disability benefits.").  Thus, in identifying Plaintiff as having a remote diagnosis of fibromyalgia but not finding Plaintiff disabled based on that finding, the ALJ did not err.

Plaintiff also apparently argues that the ALJ erred in making his RFC determination because he failed to properly consider that the severity of her symptoms of fibromyalgia reduced her ability to perform work.  Plaintiff notes Dr. German's findings of eighteen positive trigger points on several occasions and states that Dr. German opined that Plaintiff suffered from fibromyalgia (*see* doc. 18 at 15, citing doc. 14 at 678–88).  As the court reads Dr. German's assessments from March 2008, April 2008, and January 2009, however, Dr. German did not reach a specific diagnosis of fibromyalgia; rather, it appears that although Dr. German noted numerous positive trigger points at each of her three examinations (Tr. 680, 684, and 687), she reached only a differential diagnosis of fibromyalgia as she continued to assess Plaintiff's numerous signs and symptoms (*see* Tr. 681, 685, and 688).  Even if Dr. German's records may be otherwise understood, however, and Dr. German did diagnose Plaintiff with fibromyalgia, Dr. German did not report findings of physical impairments or limitations so severe that Plaintiff would be rendered unable to work due to this condition.  Rather, while Plaintiff reported to Dr. German that she continued to have muscle pain, she also indicated that it was less intense and that she was doing better (Tr. 683, 686).

In support of her apparent challenge to the ALJ's RFC determination, Plaintiff also refers, without precise citations, to the records of the Pain Management Center (*see id.* at 16, citing doc. 14 at 150–84, 428–30, 482–515, and 672–77); the reports of Vera Foley, the nurse practitioner who saw Plaintiff for her back pain, "all over" pain, and other complaints (*see id.*, citing doc. 14 at

---

physical or mental ability to do basic work activities.").  Plaintiff apparently does not actually contest the ALJ's step two finding, however (*see* doc. 18 at 14).  Rather, it appears that the gist of Plaintiff's argument is that the ALJ did not adequately assess the impact fibromyalgia would have on her ability to perform work activities.  Thus the court construes the instant ground as challenging the ALJ's RFC determination at step four that, despite her fibromyalgia symptoms, Plaintiff was able to perform her past relevant work.  *See* 20 C.F.R. § 416.920(e).

438–51); and Gateway (*see id.*, citing doc. 14 at 575–78).   According to Plaintiff, these records show that she has suffered from "all over" pain since at least February 2005, including "[i]nterestingly enough . . . where fibromyalgia trigger points are located" (doc. 18 at 16).   Plaintiff then proceeds to "match  up" the locations on her body where she has experienced pain with the eighteen known trigger point sites for fibromyalgia (*id.* at 16–17).

Plaintiff's correlating her reported complaints of pain in various parts of her body to the eighteen trigger point sites known to be implicated in fibromyalgia in effect constitutes an attempt to render an opinion on the medical evidence.   Such  an attempt obviously is inappropriate and, accordingly,  unavailing.   In any event, review of the records roughly cited by Plaintiff, as outlined in some detail by the court above in Section IV, does not support a finding that the ALJ erred in making his RFC determination by failing to fully consider the severity of Plaintiff's fibromyalgia symptoms.   To the contrary, the record is sufficient to support the ALJ's conclusion that Plaintiff could perform light work with certain restrictions, including that she could only lift and/or carry ten pounds frequently and twenty pounds occasionally; sit, stand, or walk six hours each in an eight-hour period; occasionally stoop, kneel, crouch, and climb stairs; never climb ladders, ropes, or scaffolds; and never work at unprotected heights (Tr. 23).   The objective medical records from Gateway, Vera Foley (whose disability opinion the ALJ was entitled to reject for the reasons he identified), and the Pain Management Center simply do not show that Plaintiff suffered from symptoms of fibromyalgia so severe that she could not perform work permitted by the RFC which the ALJ assessed, including her past relevant work as a counselor and case worker.   The court therefore concludes that the instant ground for reversal and remand is without merit.

VII.   CONCLUSION

For the foregoing reasons, this court concludes that the Commissioner's decision is supported by substantial evidence and should not be disturbed.   42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at 1560.   Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.   The court therefore recommends that the Commissioner's decision denying benefits be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this <u>29th</u> day of June 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

  **Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**